# META MILLER and Others v. THEODORE MILLER.[1]

February 20, 1914.

Nos. 18,451—(273).

**Specific performance.**
In this action to compel specific performance of an alleged oral agreement to convey land, the evidence is examined and *held* insufficient to sustain the finding of the trial court that such agreement was made.

Action in the district court for McLeod county by plaintiff in her own behalf, and as administratrix of the estate of Fred C. Miller, deceased, Laura Miller and Elizabeth Miller, infants, by their guardian, to obtain specific performance of a contract to sell the real estate described in the complaint. The action was tried before Morrison, J., who made findings and ordered judgment in favor of plaintiffs, upon their depositing with the clerk of court the sum of $3,002. From the judgment entered pursuant to the order for judgment, defendant appealed. Reversed.

*W. F. Odell, W. C. Odell,* and *Otto Kueffner,* for appellant.
*M. C. Tifft,* for respondents.

BUNN, J.

Plaintiff Meta Miller is the widow of Fred C. Miller, the administratrix of his estate, and the guardian of his two minor children, also named as plaintiffs. They brought this action against Theodore Miller to compel specific performance of an alleged agreement to convey to Fred C. Miller 80 acres of land in McLeod county. The complaint alleged "that on or about the 3rd day of January, 1906, defendant sold said real estate and with it certain personal property, then on said premises, to his son, the said Fred C. Miller, for the agreed price of $2,500, and agreed to convey said real estate to the said Fred C. Miller, his heirs and assigns, by warranty deed of con-

[1] Reported in 145 N. W. 615.

125 M.—4.

veyance upon the payment to him of the sum of $2,500, which said sum should be paid to him within such reasonable time thereafter as said Fred C. Miller might be able or desire to pay the same, and that in the meantime he should pay defendant interest thereon at the rate of four per cent per annum." The complaint further alleged that Fred C. Miller thereupon went into possession of the real estate and personal property, and remained in possession thereof until his death on March 3, 1911; that he made valuable and permanent improvements on the property, paid the taxes annually, and paid defendant interest for the years 1907 and 1908. It was alleged that plaintiffs, prior to the commencement of the action, duly tendered defendant the sum of $2,500 with interest, but that defendant refused and refuses to execute and deliver a deed.

The answer denied any agreement by defendant to convey. It alleged that Fred C. Miller went into possession of the premises under a lease, and not under an agreement for the sale of the premises to him, and that he surrendered possession of the premises to defendant in February, 1910. It admits the payment of taxes by Fred, and the payment by him to defendant of the sum of $123 during the years 1907 and 1908, pursuant to the lease under which it was alleged Fred C. Miller went into possession. The answer then pleads the statute of frauds, alleging that, if there was any such agreement as alleged in the complaint, it was entirely oral and void; that Fred C. Miller did not take possession under such agreement, and did no act in part performance thereof. The reply was a general denial.

The issues thus made were tried to the court without a jury, and were decided in favor of plaintiffs. Judgment was entered on the decision, and defendant appealed.

The first and chief contention of defendant is that the finding of the trial court that the agreement to convey was made by defendant as claimed in the complaint, is not sustained by the evidence. This finding on the vital point in the case is in the exact words of the complaint, which we have above quoted. A decision of the question whether there is sufficient evidence to sustain it, requires a careful examination of the testimony given on the trial in the light of two

well-understood rules. These rules are: (1) A court of equity will not compel the specific performance of an oral contract for the conveyance of real estate, unless the terms thereof are definite and certain and proved to the satisfaction of the court. The contract must be clearly proved, and its terms should be so specific and distinct as to leave no reasonable doubt of their meaning. Lowe v. Lowe, 83 Minn. 206, 210, 86 N. W. 11; Kileen v. Kennedy, 90 Minn. 414, 97 N. W. 126; (2) a decision by the trial court of a question of fact will not be disturbed, if there is evidence reasonably tending to support it.

Defendant purchased the farm in question, together with certain personal property thereon, early in January, 1906, paying $5,000 for the farm, and $700 for the personal property. At the time of this purchase Fred Miller, the eldest of defendant's 12 children, was 25 years of age. He had resided with his father with the exception of a short interval, and was still residing there. He and Meta Reinitz, the daughter of a neighboring farmer, had for some time been engaged to marry each other. Shortly after defendant purchased the farm in question, Fred C. Miller went into possession. The only evidence explaining the character of his possession at this time is the testimony of defendant, who says: "I told [Fred that] if he wanted to live on the farm he has to pay me a hundred dollars a year for the 80 acres, for the use of the 80 acres; he can get the income of the farm, he can have the property right away, or the land, for his use, and has to pay taxes and road taxes for this property and keep up fences." Defendant testified that after Fred had been upon the farm for about six weeks, he offered to sell him the property for $2,500: "I told him if he like to have a deed to the farm, of the 80 acres, he should see to get $2,500 and pay me $2,500, and I would give him the deed." "I told him I wanted the money right away, pretty soon." "There was nobody asked me for the deed, but I thought maybe he would like to have a deed, you know, Fred." Admittedly Fred never asked for a deed, and never offered to pay the $2,500. Nor did plaintiffs ever make any claim that they were entitled to a deed until their attorney, in the spring of 1912, tendered defendant the money with interest and demanded a conveyance.

In April, 1906, Meta Reinitz and Fred Miller were married. There is evidence that defendant, before the marriage and while Fred was living on the farm, told Meta that he wanted the marriage to take place soon, and that they were going to live on the farm. After the wedding, Meta joined her husband on the 80 acres in question, and they lived there together until February, 1910. They cultivated the land, and had the crops for four seasons. Two children were born to them. Fred paid the taxes on the land and on the personal property. He built and repaired fences, planted a grove, constructed a hog house, and made other improvements. The personal property that was on the place when Fred took possession consisted of agricultural implements, stock and household furniture. The farm was an old one, all cultivated land and meadow, and had the usual farm buildings. When Meta went to live with her husband she took with her a bedroom set and a cow. Fred bought other items of personal property during his occupancy of the premises. A year after the marriage Fred was taken ill. His disease, tuberculosis, had progressed so far in the early winter of 1910 that he was unable to do any more work. About February 1, 1910, he went to his father's home, where he remained and was cared for until his death on March 3, 1911. Within a month after Fred left for his father's home, his wife took her young children and went to live with her parents. She took with her the furniture that she had brought to the farm, and that which she and Fred had purchased, and telephoned to defendant that she was going to leave the farm and the personal property that remained on it. Defendant shortly afterwards removed this personal property to his own place. He used the grain and sold the hogs and a few other small items. From January, 1906, to the time of Fred's death defendant expended for him, in cash given him from time to time and bills paid, approximately $1,600. Defendant paid all of the expenses of his son's illness. Meta visited her husband from time to time while he was ill at his father's house, but she continued to live apart from him. Defendant took possession of the farm soon after Meta left it, and leased it to a tenant.

Outside of the testimony of defendant himself, the only evidence in any way tending to show an agreement by defendant to sell the

farm to his son, was the testimony of an uncle of plaintiff, who gave a conversation with defendant during the time Fred was ill at his house. The witness testified that in this conversation defendant said that he and Fred had an agreement that if the son paid the father a certain amount of money (the witness could not remember the sum mentioned) "he could have the deed after he paid that much money." On cross-examination the witness stated that defendant said that he offered to deed the land to Fred, if Fred would pay him a certain amount of money, but that Fred didn't pay the money.

The evidence, in our opinion, is wholly insufficient to prove an agreement of sale that can be ordered specifically performed. It amounts to this, and no more; Fred's original possession of the land was as a tenant of his father. During this tenancy, the father offered to give his son a deed, if he wanted it, on payment of $2,500, this sum to be paid "at once, or soon." The son continued to occupy the farm for four years, and neither during that time nor thereafter during his life, did he pay or offer to pay the sum named or any part of it. On the contrary he gave up possession, and defendant took the property, leased it to another, and supported and cared for the son in his illness. In other words, the evidence proves an offer to sell, but negatives, or at least is silent as to, any acceptance of that offer. Nor does it prove an offer on any such terms as to the time of payment as found by the trial court. It may be that defendant would have conveyed to his son had he paid the $2,500 at any time during his life, or even that he would have presented him with a deed, as he admittedly offered to present him with the greater part of the property's actual value. But a court must look to the evidence, and we find none that justified the conclusion that Fred could pay as he was able and desired to do so. Certainly the evidence is very far from clearly proving such a contract as the court found, with its terms so specific and distinct as to leave no reasonable doubt of their meaning. The possession of Fred, granting it, if we could, to be under an oral contract to convey, and the improvements made by him on the land, would be sufficient to take the agreement out of the statute of frauds, but the evidence fails to prove any oral agreement. It proves an offer on definite terms, but not an offer or agree-

ment such as the court found, and not an agreement at all, because the offer was not accepted. Acceptance of the offer could of course be proved by the acts of Fred, as well as by words. But the improvements made by him, when we consider their nature, how they were paid for, the failure to pay any part of the $2,500, and very little "interest" or "rent," the giving up of possession by the son and his wife, the care of the son by his father, and the moneys paid out for him, are not sufficient evidence of his acceptance of the offer. These facts rather indicate nonacceptance.

We hold that the finding of the trial court that defendant sold and agreed to convey the land to Fred C. Miller is not sustained by the evidence. Whether the agreement as found, if it had been made, would be sufficiently definite in its terms, or would have sufficient mutuality to warrant specific performance, we do not decide.

Judgment reversed.